# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>VICTOR BERNARD JONES,<br><br>        Defendant. | No. 09-CR-83-CJW-MAR<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

## I.    INTRODUCTION

This matter is before the Court on defendant's Amended Motion for Compassionate Release filed on June 25, 2020. (Doc. 123). In support of his motion, defense counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967). (Doc. 124). The government has not filed a brief in response. For the following reasons, the Court **denies** defendant's motion.

## II.    RELEVANT BACKGROUND

In late 2008, officers received information that defendant was a frequent supplier of heroin to various people. (Doc. 58, at 7). On December 16, 2008, after attempting to conduct a controlled buy of heroin from defendant which was ultimately not completed, officers interviewed defendant. (*Id.*, at 7–8). Defendant admitted that he purchased heroin in Chicago, cut it with a sleep aid, packaged it into individual baggies, and sold it to various people. (*Id.*, at 8). Defendant stated he sold approximately $1,000 of heroin a month, although his known transactions indicate he sold more. (*Id.*). That same day, officers searched defendant's residence and found, among other things, marijuana seeds, two burnt marijuana cigarettes, rolling paper, and security cameras. (*Id.*). In May 2009,

defendant twice sold heroin to a confidential informant. (*Id.*, at 9). A witness before the grand jury testified that defendant on occasion had his approximately 12-year-old daughter deliver heroin to customers on his behalf. (*Id.*).

On December 8, 2009, a grand jury issued an Indictment charging defendant with two counts of distributing heroin within 1,000 feet of a school in violation of Title 21, United States Code, Sections 841(a)(1), 851, and 860. (Doc. 2). On December 18, 2009, officers arrested defendant. (Doc. 13). On December 21, 2009, defendant pleaded not guilty and was detained. (Doc. 6). On January 13, 2010, a grand jury issued a Superseding Indictment additionally charging defendant with conspiracy to distribute heroin in violation of Sections 841(a)(1), 846, and 851. (Doc. 21). On January 15, 2010, defendant waived arraignment on the Superseding Indictment and pleaded not guilty. (Doc. 25). On February 3, 2010, defendant changed his plea to guilty on one count of distributing heroin within 1,000 feet of a school in the Superseding Indictment pursuant to a plea agreement with the government. (Docs. 44 & 48). On February 18, 2010, the Court accepted defendant's plea. (Doc. 51).

On June 16, 2010, the United States Probation Office filed defendant's final presentence investigation report. (Doc. 58). Defendant was, at that time, 41 years old. (*Id.*, at 2). Defendant's parents both died when he was young, one from cancer and the other from gun violence. (*Id.*, at 19). As a result, defendant was raised by his aunt and other family members. (*Id.*). He reported being "constantly beaten" by his aunt and cousins. (*Id.*). Defendant reported that he was "kicked out" of high school in the ninth grade. (*Id.*, at 21). Although defendant reported that he earned his GED, records reflected he did not. (*Id.*). His employment history was minimal and episodic. (*Id.*, at 22). He had been unemployed since at least March 2008. (*Id.*). Defendant had six children across four relationships and one marriage. (*Id.*, at 19–20). Defendant reported some history of arthritis in his legs. (*Id.*, at 20). He had no history of mental health

concerns. (*Id.*, at 21). Defendant reported long and heavy use of alcohol and marijuana, heavy use of heroin in the past, and minor use of cocaine. (*Id.*, at 21). Defendant reported that he completed drug treatment in 1992. (*Id.*).

Defendant had an extensive criminal history. As a juvenile, he was convicted of robbery on an unknown date. (*Id.*, at 12). At age 16, defendant was convicted of robbery after he and five others, using a sawed-off shotgun and a handgun, took $104 and a ring from a couple. (*Id.*). At age 17, he was convicted of burglary for entering a railroad car with the intent to commit a theft. (*Id.*, at 13). Also at 17, defendant was convicted of attempted armed robbery for demanding money and personal property from a woman at gunpoint. (*Id.*, at 13). At age 24, defendant was convicted of possession with intent to deliver heroin. (*Id.*). Also at 24, defendant was convicted of burglary after defendant attempted to pilfer engine parts from a parked car. (*Id.*, at 14). At age 33, defendant was convicted of possession of a controlled substance after he was found accepting cash while in possession of bags of cocaine and heroin. (*Id.*, at 15). Defendant also had various other minor or driving-related convictions. (*Id.*, at 12–17). His probation was revoked once, and his longest single term of incarceration was approximately two years. (*Id.*).

On July 22, 2010, the Court sentenced defendant. (Doc. 65). Defendant was in criminal history category V with a total offense level of 24, yielding an advisory guideline range of imprisonment of 92 to 115 months followed by six years to life on supervised release. (Doc. 58, at 25). Under the plea agreement, the parties agreed to an upward departure due to understatement of criminal history. (Doc. 62, at 1–2). The parties agreed defendant's total offense level should be increased to 31 and his criminal history increased to category VI, yielding an advisory guideline range of 188 to 235 months imprisonment. (*Id.*). As a result, the government agreed to waive a mandatory life sentence. (*Id.*, at 2). The Court accepted the parties' agreement to an upward departure

(Doc. 65) and sentenced defendant to 235 months' imprisonment followed by six years on supervised release (Doc. 66). On July 23, 2010, defendant timely appealed his sentence. (Doc. 68). On April 19, 2011, the Eighth Circuit Court of Appeals affirmed defendant's sentence. (Doc. 79).

On March 5, 2015, the Court, on its own motion, directed the government to respond on the issue of whether defendant should receive a sentencing reduction in light of changes to the United States Sentencing Guidelines ("USSG"). (Doc. 83). After holding an evidentiary hearing on May 7, 2015, at which defendant was present with counsel (Doc. 91), the Court found a sentencing reduction was not appropriate on May 11, 2015 (Doc. 92). On May 21, 2015, defendant timely appealed. (Doc. 94). On June 16, 2016, the Eighth Circuit Court of Appeals affirmed. (Doc. 105). On June 26, 2019, defendant filed a pro se motion to reduce his sentence. (Doc. 111). On July 12, 2019, the Court denied defendant's motion. (Doc. 112). On May 13, 2020, defendant filed another motion to reduce his sentence. (Doc. 113). On May 15, 2020, the Court denied defendant's motion. (Doc. 114).

On May 18, 2020, defendant filed a pro se motion for compassionate release. (Doc. 115). After appointing defendant counsel (Doc. 116), defendant filed a pro se supplement to his motion (Doc. 117) and his Amended Motion for Compassionate Release now before the Court (Doc. 123). Defendant is currently incarcerated at FPC Duluth with a projected release date of August 26, 2026. (Doc. 124, at 1).

### III.   *COMPASSIONATE RELEASE STANDARDS*

A court's ability to modify a sentence after it has been imposed is limited. Title 18, United States Code, Section 3582(c)(1)(A) allows a court to modify a sentence through "compassionate release." A defendant may directly petition the court for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring a motion on the defendant's behalf

4

or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The court may only reduce the defendant's sentence, however, after considering the factors set forth in Title 18, United States Code, Section 3553(a) to the extent they are applicable, and finding that:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [Bureau of Prisons] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Defendants bear the burden of establishing eligibility for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The starting point in determining what constitutes "extraordinary and compelling reasons" under Section 3582(c)(1)(A)(i) is the USSG section discussing compassionate release. *See* USSG §1B1.13; *see also United States v. Rivernider*, No. CR10-222, 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019). USSG Section 1B1.13 provides extraordinary and compelling reasons exist when the defendant is (1) suffering from a terminal illness; (2) suffering from a serious physical or medical condition, a functional or cognitive impairment, or physically or mentally deterioration due to aging which substantially diminishes the defendant's ability to care for themselves within the facility and from which the defendant is not expected to recover; (3) at least 65 years old, experiencing serious deterioration due to age, and has served at least 10 years or 75 percent of their sentence; (4) experiencing a change in family circumstances, namely the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse who now requires the defendant's care; (5) some

5

other extraordinary and compelling reason as determined by the Director of the Bureau of Prisons ("BOP").

Courts are split on whether the policy statement is binding because it predates the First Step Act of 2018's changes to Section 3582(c)(1)(A). *Compare United States v. Lynn*, No. CR89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019), *with United States v. Urkevich*, No. CR03-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019). This Court has concluded USSG Section 1B1.13, although it is a helpful guidepost, does not restrain a court's assessment of whether extraordinary and compelling reasons exist to release a defendant. *See United States v. Burnside*, No. 6:18-CR-2068-CJW-MAR, 2020 WL 3443944, at *3–4 (N.D. Iowa June 18, 2020) (compiling cases).

## IV. DISCUSSION

### A. *Exhaustion of Administrative Remedies*

Section 3582(c)(1)(A) states a court may reduce a term of imprisonment after the defendant exhausts all administrative remedies within the BOP or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" This Court has held defendants are not required to administratively appeal a warden's denial and may fulfill the exhaustion requirement of Section 3582(c)(1)(A) by waiting 30 days from the date the warden receives their request before filing a motion in the courts. *See Burnside*, 2020 WL 3443944, at *4–7.

On April 15, 2020, defendant submitted a request for release to FPC Duluth's warden. (Doc. 115, at 10–11). It appears the warden never responded. Because 30 days have now elapsed since defendant submitted his request to the warden, the Court finds defendant has fulfilled the exhaustion requirement of Section 3582(c)(1)(A).

### B. *Extraordinary and Compelling Reason*

Defendant argues an extraordinary and compelling reason for release is present because his medical conditions put him at a high risk of severe complications and death

6

if exposed to COVID-19. (Doc. 124, at 5–8). The presence of COVID-19 at a defendant's specific facility or within the BOP generally can constitute an extraordinary and compelling reason for compassionate release if the defendant is particularly susceptible to COVID-19 due to their age or underlying health conditions. *See Burnside*, 2020 WL 3443944, at *7 (compiling cases); *see also People Who are at Increased Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html.

The record shows defendant's health conditions are minor and do not place him at any elevated risk during the pandemic. He is only 51 years old. (Doc. 58, at 2). Defendant had some essential hypertension, hyperlipidemia, and mild stage 2 chronic kidney disease, but all these conditions now appear to be resolved as of at least two years ago. (Doc. 124–1, at 3–4). In October 2019, he was diagnosed as prediabetic. (*Id.*, at 3). On April 9, 2020, defendant had significantly elevated blood sugar and cholesterol, but he was still in a prediabetic range. (*Id.*). Defendant's kidney filtration rate was 60, indicating his kidney disease may be returning to some degree. (*Id.*).[1] His record, however, notes that a rating in excess of 60 "suggests chronic kidney disease if found over a 3 month period." (*Id.*). The Court does not have any records indicting defendant's kidney filtration has been a consistent issue. He is a Care Level 1 inmate and is "healthy or [has] simple chronic care" needs. (*Id.*, at 7). The Court acknowledges that defendant has some health concerns, but none appear to be sufficiently serious such that they significantly increase his susceptibility to COVID-19.[2] Moreover, FPC Duluth currently

---

[1] His eGFR rate, which measures his kidney filtration, was 60. (Doc. 124–1, at 6). An eGFR rate between 60 and 89 can indicate stage 2 kidney disease. *Estimated Glomerular Filtration Rate (eGFR)*, National Kidney Foundation, https://www.kidney.org/atoz/-content/gfr.

[2] In his pro se motion, defendant also asserts he has chronic pulmonary obstructive disorder and difficulty breathing. (Doc. 115, at 10). These conditions are not mentioned in defendant's medical records.

has no active cases of COVID-19 and only one recovered inmate. *COVID-19*, BOP, https://www.bop.gov/coronavirus/. Thus, defendant is also at a low risk of exposure to COVID-19 at this time.

Thus, the Court finds defendant has not presented an extraordinary and compelling reason for release and **denies** his motion on this basis. In the alternative, the Court will independently discuss the Section 3553(a) factors as if defendant had presented an extraordinary and compelling reason for release.

### C. *Section 3553(a) Factors and Danger to Community*

Defendant argues the Section 3553(a) factors favor release. (Doc. 124, at 8–9). Guideline Section 1B1.13(2) provides compassionate release is appropriate only when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" Section 3582(c)(1)(A) requires a court to consider the factors set forth in Title 18, United States Code, Section 3553(a) before granting compassionate release. Section 3553(a) requires the Court to consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide rehabilitative opportunities and care to the defendant; (3) the kinds of sentences available; (4) the sentencing range as set by the USSG; (5) any pertinent policy by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need for restitution to any victims.

Defendant has performed well in prison. He has completed a significant number of educational courses, earned his GED, completed two drug treatment programs, and incurred no disciplinary reports. (Doc. 124-1, at 7–11). His upbringing is also somewhat mitigating. His underlying offense, however, is aggravating. Defendant supplied a significant quantity of heroin to various people over the course of years.

8

Defendant continued to sell heroin despite intervention from law enforcement officers. Testimony also indicates defendant involved his minor child in his distribution. He had a long history of substance abuse but was not a user of heroin at the time. Defendant also had multiple violent convictions, albeit somewhat dated, and more recent convictions for distributing heroin and cocaine. On balance, the Court finds the totality of the circumstances here do not warrant a six-year reduction in defendant's sentence. Instead, maintaining his current term of imprisonment better upholds the goals of Section 3553(a) by deterring this defendant and others similarly situated from further criminal conduct, promoting respect for the law, and providing just punishment.

Thus, the Court finds the 3553(a) factors do not warrant release and **denies** defendant's motion on this basis.

## V. CONCLUSION

Defendant has failed to identify an extraordinary and compelling reason for release or show that the 3553(a) factors favor release. Thus, for the reasons discussed above, defendant's Amended Motion for Compassionate Release is **denied**. (Doc. 123).[3] Defendant must serve the remainder of his term of incarceration as previously directed. (Doc. 66).

**IT IS SO ORDERED** this 21st day of July, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[3] To the extent defendant's pro se motion for compassionate release (Doc. 115 & 117) is not superseded by his amended motion, the Court **denies** it as duplicative.